47 P.(2d) 903

**MARTINEZ v. ROCKY MOUNTAIN & S. F. RY. CO. et al.**

No. 4049.

Supreme Court of New Mexico.

July 10, 1935.

David Chavez, Jr., and E. C. Warfel, both of Santa Fé, for appellant.

W. C. Reid and E. C. Iden, both of Albuquerque, for appellees.

BICKLEY, Justice.

Appellant sued appellees for damages resulting from breach of contract, and appeals from a judgment dismissing his complaint.

By the contract entered into September 27, 1906, set out in the complaint, the predecessor in interest of appellant "grants * * * unto the party of the second part, * * * for a period of fifty years from this date, the right and privilege to take and use water from a certain spring, located upon the property of the first party, * * * near the line of the railroad of the second party. (predecessors of appellees) Said water to be taken from said spring and used by the second party for engine and railroad uses and purposes only and for no other.

"The second party, for itself, its successors and assigns, agrees to pay to the first party, his heirs, executors, administrators or assigns, Thirty Dollars (30.00) per month for said water. All payments to be made monthly during the term of this contract, whether said second party uses the said water or not, provided, however, that if the amount of water so taken and used by the second party exceeds Nine Hundred Thousand (900,000) gallons per month at the rate of seven cents (7¢) per thousand gallons. And provided further that said amount so in excess of 900,000 gallons per month shall be ascertained by a meter to be installed, kept and maintained by the second party at the plant, said meter to be open at all reasonable hours to inspection by the party of the first part or his agent, thereunto authorized.

"The second party is hereby given the right to erect upon the said property of the first party, near said spring, a pump house and coal shed, and to install in said pump house all necessary machinery and appliances for pumping and discharging water. Said pump house to be so located as not to interfere with any improvements put upon the property of the first party; and second party is hereby given the right to construct all necessary pipe lines, connecting said spring with its pumps and to the point of delivering of said water on second party's line of railroad, and to operate its pump, and for such purposes may enter upon the said premises of the first party, dig trenches for laying its pipe, and in other respects to have free access to and upon said premises, along the pipe line of second party, for the purpose of improvements, repairs or renewal thereof, to operate its pumps and to deliver by wagon or other proper conveyance, coal at its pump house upon said premises. And the first party agrees that he will not obstruct the flow of said spring nor in any way interfere with the use of the water therefrom by second party, or with any of the pipe lines, pumps and buildings."

Appellees answered and chiefly assert defensively that the contract was nothing more than a mere grant of a right or privilege, but admit that such right and privilege was to exist for 50 years, and deny that said contract made any provision binding the railroad company to take the water or pay therefor for a period of 50 years. The plaintiff demurred to these allegations upon the grounds that such assertions in the answer are conclusions of law merely, and not statements of facts, "and are in direct conflict with the meaning and intent of the contract sued on herein."

At the hearing it was stipulated that the ruling of the court on the demurrer might be considered as a final ruling disposing of the case.

The court overruled the demurrer and dismissed plaintiff's complaint.

▆ The appellees say the contract is an easement, and appellant says it is a lease. Both easement and lease convey the idea of a right of the grantee to make use of the real property of others. So far as a decision of this case is concerned, we see no essential difference. The question is, What was the intention of the parties as to the period during which the grantees were entitled to use the property, and for what period were they obliged to pay for its use?

From the record before us we must arrive at the intention of the parties from a consideration of the written instrument alone.

▆ We do not doubt that a contract may give a right to a party to use the land of another for a definite period of time and contain a provision making it terminable at the option of one or both of the parties. 16 R. C. L., Landlord & Tenant, § 625. We would expect a party relying upon such a right of termination to point to a provision of the contract plainly giving such right or at least a clear and unmistakable implication to that effect arising from the language of the contract. Mr. James, in his work on Option Contracts, at section 117, says:

"A contract covering a period of time but containing a condition that it may be terminated before that time, will remain effective for the full term, unless the condition of termination is fully complied with. Where, therefore, a particular notice, or a specified time, is required to make the notice effective, a notice not conforming to the contract, or not given at the time specified, does not have the effect of terminating the contract. With reference to mutuality, it would seem the rule is that unless the option to terminate the contract is reserved to either party, it is lacking in that essential. Thus, a contract between a railroad company and a telephone company which gives the latter the privilege of placing telephones in two depots, of the former, in consideration of free telephone

service for it, but subject to termination at the will of one, with the stipulation that no corresponding right shall be exercised by the other, lacks mutuality."

"A provision in a contract employing a baseball player for the season of 1913 and obligating him to contract to render similar services for the employer during the year 1914, when the employer by the contract was entitled to terminate it at any time on ten days' notice, is void for want of mutuality."

These considerations of mutuality or lack thereof are mentioned here merely as suggestive that he who relies upon a right to terminate a contract before the end of the period of his right to enjoy its benefits, ought to be held to the obligation to point out a clear provision for such claimed right of termination. Equity and good conscience suggest mutuality, unless the contrary expressly or by necessary implication appears. We think there is an inference in favor of the view that the parties did not intend that the contract should operate with a lack of mutuality. It will be noted that the contract not only grants to the grantee the right to use certain waters from the lands of the grantor, but also the right to erect upon the property of the grantor near the source of the water supply a pump house and coal shed and to install machinery for pumping and discharging water, and also the right to construct pipe lines connecting the water sup-

ply with its pumps and thence to the point of delivery of said water on the grantee's line of railroad. If the grantee had the right to terminate the contract when the period of its enjoyment was about half completed, we see no reason why it could not have terminated it in one month after entering upon its enjoyment. Whether the construction of buildings and pipe lines would create such a disturbance of the grantor's enjoyment of the use of his land as to cause him substantial damage does not appear from the record, but it seems to us to be a reasonable inference that such construction would cause some damage and that it was anticipated by the grantor that he would be compensated for such out of the remuneration he was to receive for the full period of time the grant was to endure for the privilege the grantee had procured, to use water from the grantor's spring, and otherwise occupy his land.

Under the provisions of the contract, the grantor "grants * * * unto the party of the second part * * * for a period of fifty years from this date, the right and privilege to take and use water from a certain spring, etc.," and the grantee agrees to pay therefor "all payments to be made monthly during the *term* of this contract." (Italics ours.)

The lexicographers generally give "period" as a synonym of "term." If the contract had used the language that the

grant of the privilege of using water for a *"term* of fifty years," it would not have been any more favorable to the contention of appellant than the language employed "for a *period* of fifty years." When the contract stated that all payments were to be made monthly "during the *term of this contract,*" it must be supposed that the word "term" was used in its ordinary signification. Black's Law Dictionary states: " 'Term' signifies the bounds, limitation or extension of time by which an estate is granted as when a man holds an estate for any limited or specific number of years, which is entitled his 'term.' "

The Standard Dictionary defines "term" as a "fixed period or definite limit of time."

And again: "The time during which anything exists; the period of duration."

In Words and Phrases, First Series, Vol. 8, page 6916, it is said: " 'Term,' as applied to time, signifies a fixed period, or a determined or prescribed duration. [Citing cases.]"

"The word 'term' implies a period of time with some definite termination. Rooney v. City of Omaha, 105 Neb. 447, 181 N. W. 143, 144." Words and Phrases, Third Series, Vol. 7, page 435.

The right claimed by appellees is the opposite of fixity of period and definiteness of termination.

So it seems to us that when the parties employed the phrase "all payments to be made monthly during the *term* of this contract," the word term there employed implies the definite *period* of time theretofore referred to in the contract; namely, "a period of fifty years." If the parties had said "all payments to be made monthly during the *period* of this contract, the meaning would have been the same.

The trial court erred in overruling the demurrer. The judgment should be reversed and the cause remanded, with directions to the district court to sustain the demurrer and enter such judgment as may be appropriate in accordance with the views expressed herein.

It is so ordered.

SADLER, C. J., and HUDSPETH, WATSON, and ZINN, JJ., concur.