2003-NMCA-093

75 P.3d 838

**PORTALES NATIONAL BANK,
Plaintiff/Counterdefendant–
Appellee,**

v.

**Abe M. RIBBLE and Maurene Ribble,
Husband and Wife, Individually and as
Trustees under the Terms and Condi-
tions of that certain Trust, dated No-
vember 21, 1987, Defendants/Counter-
claimants–Appellants.**

No. 23,411.

Court of Appeals of New Mexico.

May 23, 2003.

Randy Knudson, Stephen Doerr, Doerr & Knudson, P.A., Portales, NM, for Appellee.

Warren F. Frost, Warren F. Frost, P.C., Tucumcari, NM, for Appellants.

## OPINION

PICKARD, Judge.

{1} Abe and Maurene Ribble, Defendants/Counterclaimants–Appellants (the Ribbles), challenge on interlocutory appeal the trial court's grant of summary judgment denying their claim of prima facie tort. They also challenge the trial court's limitation of their unconscionable trade practice claim under the Unfair Practices Act (UPA). We reverse on both issues and remand to the trial court.

### HISTORY AND PROCEDURAL POSTURE

{2} The Ribbles have lived in Portales, New Mexico, and banked at Portales National Bank (the Bank) since the late 1930s. This lawsuit began in March 1999, when the Bank commenced foreclosure proceedings for non-payment of a note held by the Bank and secured by a mortgage on the Ribbles' ranch, cattle, and truck. This note, totaling $168,736.31, was a renewal and combination of several previous loans and was made to assist the Ribbles with ranch expenses, medical bills, and checking account overdrafts. A default judgment was entered on July 12, 1999, and a special master's sale of the ranch was scheduled for December 2, 1999. The Ribbles retained counsel and moved to set aside the default judgment, which was granted by the trial court after a lengthy hearing. The Ribbles then filed a counterclaim, alleging unfair trade practices, prima facie tort, and intentional infliction of emotional distress. The trial court granted summary judgment to the Bank on the claims of prima facie tort and intentional infliction of emotional distress, and it limited the UPA claim to acts and damages that occurred after June 23, 1998, the date that the Ribbles signed another note with the Bank in the amount of $60,000 that was secured by a mortgage on their residence. The Ribbles petitioned this Court for and were granted an interlocutory appeal. They challenge the trial court's

grant of summary judgment on the prima facie tort claim and the limitations on the UPA claim.

## DISCUSSION

{3} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. The movant must make a prima facie showing that he or she is entitled to summary judgment. *Roth v. Thompson*, 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). Then the burden shifts to the non-moving party to demonstrate the existence of specific evidentiary facts that would require a trial on the merits. *Id.* All reasonable inferences are construed in favor of the non-moving party. *Barber's Super Mkts., Inc. v. Stryker*, 81 N.M. 227, 229, 465 P.2d 284, 286 (1970). We review the grant of a motion for summary judgment de novo. *Self*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### Prima Facie Tort

{4} Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid traditional intentional tort categories. *Martinez v. N. Rio Arriba Elec. Coop., Inc.*, 2002–NMCA–083, ¶ 24, 132 N.M. 510, 51 P.3d 1164. The elements of a prima facie tort are (1) an intentional, lawful act by defendant, (2) intent to injure the plaintiff, (3) injury to the plaintiff, and (4) the absence of justification or insufficient justification for the defendant's acts. *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990). Our Supreme Court has held that the act complained of must be committed with intent to harm, but it need not be shown that the act was solely intended to injure the plaintiff. *Id.* at 395, 785 P.2d at 735. Because not every intentionally caused harm gives rise to an actionable tort, once intent to injure is established, the trial court must balance the defendant's act or acts against the justification for the act or acts and the severity of the injury, weighing (1) the injury, (2) the culpable character of the conduct, and (3) whether the conduct is unjustifiable under the circumstances. *Beavers v. Johnson Controls World Servs., Inc.*, 120 N.M. 343, 348–49, 901 P.2d 761, 766–67 (Ct.App.1995). Culpable conduct has been defined as conduct that is improper, wrongful, blameworthy, and not in accord with community standards of right conduct. Restatement (Second) of Torts § 870 cmt e, at 282 (1979). Unjustified conduct has been defined as conduct that is not excusable or otherwise not privileged. *Id.*

{5} The three factors to balance found in *Beavers* were further refined as four factors in both that case and in the Uniform Jury Instructions. *Beavers*, 120 N.M. at 349, 901 P.2d at 767; UJI 13–1631A NMRA 2003. One factor is the nature and seriousness of the harm to the plaintiff. Another is the character, i.e., the fairness or unfairness, of the means used by the defendant. Another is the defendant's motive. The final factor is the nature and significance of the defendant's acts or the value to the defendant or to society in general of the interests advanced by the defendant's conduct. The trial court must initially balance these factors and, if it finds that a jury could reasonably find in the plaintiff's favor, the trial court must submit the claim to the jury for its own balancing of the factors. *See Beavers*, 120 N.M. at 348, 901 P.2d at 766 (stating that both the appellate court and the trial court use the same balancing test to determine if the claim should be submitted to the jury); UJI 13–1631A (outlining the same factors for the jury's consideration); *cf.* UJI 14–5040 NMRA 2003 and Committee commentary thereto (indicating that, in an analogous situation (involving the voluntariness of a confession), the court makes a preliminary determination of voluntariness and then, if the confession passes the threshold showing of voluntariness, the jury must also determine that it is voluntary before the jury considers the confession as substantive evidence).

{6} The Ribbles argued below and on appeal that the Bank, through its president David Stone, engaged in a course of conduct that resulted in so much indebtedness that Mr. Stone would ultimately be able to obtain control of the Ribble ranch. They allege that

Mr. Stone (1) charged exorbitant overdraft fees every month for five years, after the Ribbles had clearly demonstrated an inability to properly handle their checking accounts; (2) manipulated their loan portfolio by requiring short-term demand notes that the Ribbles could not possibly pay; (3) misled the Ribbles when they took out an advance note, secured by a mortgage on their residence, based upon assurances that they would incur no more overdraft charges; (4) provided another bank with incorrect information about the money the Ribbles actually owed the Bank, thereby thwarting the Ribbles' efforts to obtain financing elsewhere; and (5) made intentional misrepresentations to Mr. Ribble for the purposes of acquiring a default judgment against them. These acts, combined with several instances when Mr. Stone made express statements of his desire or intention to obtain the ranch, allow the inference that Mr. Stone's intent was to gain control and ownership of the Ribble ranch. This inference, if indulged in by the jury, would make the Bank's acts unjustifiable. We understand the Ribbles to be alleging that the harm intended was not only $24,057 in overdraft charges, but the foreclosure of their ranch and the attempt at actual acquisition of their ranch through otherwise legal banking activity engaged in over the course of approximately five years.

{7} The trial court found that the Ribbles failed to show that the Bank intended to harm them. In its letter ruling, the trial court stated that the Bank did not intend to harm the Ribbles through its practices because the Bank was justified in keeping the accounts open and was justified in charging the overdraft fees. Though the trial court agreed that there was a dispute about whether Mr. Stone wanted to acquire the Ribbles' ranch, it determined that the dispute was not evidence of harmful intent. The trial court found that the Ribbles' own behavior of continuing to incur overdraft charges was the proximate cause of their damages. The Bank defends on the same grounds, arguing that the Ribbles caused their own damages and that the Bank's fees were neither exorbitant nor wrongful. We think that the trial court's view of the evidence and its interpretation of the elements of prima facie tort was

too narrow when it determined that the Bank did not intend to injure the Ribbles.

■ {8} In the context of prima facie tort, our courts have defined intent to injure, which is used synonymously with malice, as the intentional doing of a wrongful act without just cause or excuse. *Kitchell v. Pub. Serv. Co. of N.M.*, 1998–NMSC–051, ¶ 17, 126 N.M. 525, 972 P.2d 344. Not only must the act be intentional, but the defendant must know that the act was wrong when he or she did it. *Id.* The burden is on the plaintiff to make such a showing, which must be of an actual intention to injure, not merely an intent to do the act which may result in the claimed injury. *Lexington Ins. Co. v. Rummel*, 1997–NMSC–043, ¶ 14, 123 N.M. 774, 945 P.2d 992. Plaintiff's showing must evince more than a mere insensitivity towards the injured party. *Id.*

{9} Accordingly, we look at the facts regarding intent. As noted above, the Ribbles allege that a course of conduct, spanning five years and viewed in the aggregate, combined with Mr. Stone's desire to acquire the ranch, show an intent to harm them. To that end, the trial court erred in considering only the Bank's failure to close the Ribbles' accounts and the Bank's persistent charging of overdraft fees, and in not considering all of the conduct alleged by the Ribbles over the five-year period. Additionally, the fact that the Bank's acts were legal does not discharge it from an action for prima facie tort. The evidence was that Mr. Stone exercised discretion as to whether to return an overdrawn check or charge a fee. Thus, he had choices to make and made them. If a jury could find that the underlying motive behind the acts, in this case Mr. Stone's alleged desire to acquire the Ribble ranch, is malicious, the trial court must proceed to the balancing test laid out in *Beavers*, 120 N.M. at 348–49, 901 P.2d at 766–67, to determine if the otherwise legal course of action taken by the Bank over the previous five years was justifiable. *See Lexington Ins. Co.*, 1997–NMSC–043, ¶ 11, 123 N.M. 774, 945 P.2d 992 (stating that balancing the malicious intent of the defendant against the justification for the injurious act offered and the severity of the injury is a necessary step for determining prima facie

tort after determining that there is evidence of intent to injure). In other words, the linchpin of the Ribbles' claim is that the Bank, through its president, engaged in its conduct so that its president could acquire the Ribbles' ranch. If the jury finds this disputed issue of fact on the Bank's motive to be true, then the other factors to balance will fall into place.

{10} The trial court's ruling, which determined that the intent to harm must have been related to either the Bank's failure to close the Ribbles' checking accounts or to the Bank's continuing to charge overdraft fees, failed to properly consider the alleged underlying intent to harm the Ribbles by attempting to acquire their ranch. Therefore, we reverse the trial court's grant of summary judgment on the claim of prima facie tort because the trial court did not consider all of the pertinent evidence and because the Ribbles have overcome their burden to demonstrate a disputed material fact.

■ {11} The Bank argues that the Ribbles are relying on prima facie tort as a "catch-all" means of recovery that is being asserted solely in order to circumvent or evade established law in order to evade proof of essential elements of the Ribbles' other claims. *See Schmitz*, 109 N.M. at 398, 785 P.2d at 738 ("[P]rima facie tort should not be used to evade stringent requirements of other established doctrines of law."). The Bank relies on *Stock v. Grantham*, 1998–NMCA–081, ¶¶ 38–39, 125 N.M. 564, 964 P.2d 125, for its position. In *Stock*, the plaintiff's complaint included claims for intentional infliction of emotional distress and interference with entitlement to unemployment compensation in addition to the prima facie tort claim. *Id.* ¶¶ 25, 33, 964 P.2d 125. This Court held that the prima facie tort claim was duplicative of the other two tort claims and could not be used as an alternative to evade proof of the elements of those other claims. *Id.* ¶¶ 38–39, 964 P.2d 125.

{12} Here, the Ribbles are not pursuing their claim for intentional infliction of emotional distress, which leaves prima facie tort as their only tort claim. In addition, they are seeking damages beyond those for emotional distress. The Bank has not identified a tort claim under an accepted category of tort claims, nor can we discern one. Our Supreme Court has stated that prima facie tort may be pleaded in the alternative and may be submitted to a jury if the claim does not fit "within the contours of accepted torts." *Schmitz*, 109 N.M. at 396, 785 P.2d at 736. We have determined above that the Ribbles have submitted sufficient evidence to overcome summary judgment. We also determine that prima facie tort is an appropriate claim to bring in this proceeding because the claim alleges intent to harm the Ribbles through otherwise legal behavior, and the claim does not fit within an accepted category of tort.

## Limitation on UPA Claim

■ {13} The Ribbles argue that the trial court failed to consider all of the evidence submitted regarding their UPA claim and that the trial court erred in limiting the claim only to practices that took place after June 23, 1998. The trial court determined that the only underlying evidence of the UPA claim was the circumstances and purpose surrounding the $60,000 note executed on June 23, 1998. The trial court limited damages to those that accrued after that date, pursuant to NMSA 1978, § 57–12–2(D)(15) and (17) (1999) (defining an unfair or deceptive trade practice as making false or misleading statements, for example, by "stating that a transaction involves rights, remedies or obligations that it does not involve" and "failure to deliver the quality or quantity of goods or services contracted for") and under Section 57–12–2(E)(1) (defining unconscionable trade practices as taking advantage of the "lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree").

{14} Our review of the record reveals that the Ribbles alleged that the Bank engaged in an unconscionable trade practice by taking advantage of the Ribbles' lack of ability and capacity due to their advancing age. They alleged below and on appeal that Mr. Stone's attempts to acquire the Ribble ranch started in 1994 with the charging of excessive overdraft fees, then continued by misrepresenting the nature of the advance note in June of 1998, by the Bank's alleged thwarting of the

Ribbles' attempt at obtaining financing elsewhere, and by the eventual attempted foreclosure on the ranch. These allegations are supported by bank records, copies of letters from Mr. Stone, affidavits of the Ribbles' daughter and son in law, depositions of Abe and Maureen Ribble, and the deposition of David McDermid.

{15} We again interpret the Ribbles' argument to mean that the pattern of conduct by the Bank, starting in 1994 and continuing through the foreclosure action, when considered in the aggregate, constitutes unconscionable trade practices as defined by Section 57–12–2(E). Though the individual acts may be legal, it is reasonable to infer that the Bank took advantage of the Ribbles to a "grossly unfair degree" because of (1) the Ribbles' advancing age, (2) their clear inability to handle their accounts, and (3) their long-term dealings with the Bank that could have justified their belief that the Bank had sufficient collateral in their property that it should have honored their checks. *See* § 57–12–2(E). While the false and misleading statements may have related only to the June 23, 1998 note, we determine that the Ribbles have advanced facts sufficient to go forward on their broad claim of unconscionable trade practices. Because the trial court did not consider any evidence except that evidence relating to the June 1998 note, we reverse the trial court's limitation of remedies under the UPA claim.

## CONCLUSION

{16} We reverse the grant of summary judgment on the prima facie tort claim and we reverse the limitation of the UPA claim. We remand for trial.

{17} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and A. JOSEPH ALARID, Judge.