**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:  2018-NMSC-012

Filing Date:  January 22, 2018

Docket No. S-1-SC-36181

CRAIG BEAUDRY,

       Plaintiff-Respondent,

v.

FARMERS INSURANCE EXCHANGE,
TRUCK INSURANCE EXCHANGE,
FIRE INSURANCE EXCHANGE,
MID-CENTURY INSURANCE COMPANY,
FARMERS NEW WORLD LIFE INSURANCE
COMPANY, FARMERS INSURANCE
COMPANY OF ARIZONA, LANCE CARROLL,
and CRAIG ALLIN,

       Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sarah M. Singleton, District Judge**

Lewis Roca Rothgerber Christie LLP
Ross L. Crown
Albuquerque, NM

Steven J. Hulsman
Kristina N. Holmstrom
Phoenix, AZ

Skadden, Arps, Slate, Meagher & Flom LLP
Raoul Kennedy
James P. Schaefer
Palo Alto, CA

for Petitioners

Law Office of Jane B. Yohalem

1

Jane B. Yohalem
Santa Fe, NM

O'Friel and Levy, P.C.
Pierre Levy
Aimee S. Bevan
Santa Fe, NM

Law Office of Barry Green
Barry Green
Santa Fe, NM

for Respondent

Jarmie & Associates
Mark D. Standridge
Las Cruces, NM

for Amicus Curiae New Mexico Defense Lawyers Association

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris
Nury H. Yoo
Albuquerque, NM

for Amicus Curiae Association of Commerce & Industry of New Mexico

David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

## OPINION

**CHÁVEZ, Justice.**

{1}     Plaintiff and the corporate Defendants freely negotiated and entered into a clear and unambiguous contract for Plaintiff to sell their insurance policies. In the contract, Plaintiff consented to a provision allowing Defendants to immediately terminate the contract if he breached it in any one of five different specified ways.  Plaintiff breached the contract in one of the specified ways, and Defendants exercised their right to terminate.  Plaintiff sued Defendants under numerous theories of liability for terminating the contract, including under the doctrine of prima facie tort, asserting that Defendants had nefarious reasons for

2

terminating the contract. We hold that when a contract is clear, unambiguous, and freely entered into, the public policy favoring freedom of contract precludes a cause of action for prima facie tort when the gravamen of the allegedly tortious action was the defendant's exercise of a contractual right. In this case, Defendants had the right to terminate the contract because of Plaintiff's breach.

## I.  BACKGROUND

**{2}**  On December 16, 2000, Plaintiff entered into an agent appointment agreement (Agreement) with Defendant insurance companies to sell their insurance policies. Defendant Lance Carroll was the District Manager for the territory that included Plaintiff's agency. Defendant Craig Allin was the New Mexico Executive Director.

**{3}**  The Agreement required Plaintiff to "submit to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published Rules and Manuals." In the event of a breach, the Agreement provided that it "may be terminated by the [non-breaching] party on thirty (30) days written notice." In addition, Defendants could immediately terminate the Agreement for five enumerated types of breach, including "[s]witching insurance from the Companies to another carrier."

**{4}**  In September 2010, Plaintiff's employee cancelled an insurance policy with Farmers, a defendant company, and switched the insured's service to a rival insurance carrier. Plaintiff does not dispute that the switching of the insurance policy occurred. However, Plaintiff argues that the breach did not cause any significant damage to Farmers; that the employee who switched the policy was new and acted without his authorization; and that at the time of the breach Plaintiff's wife, who normally served as the office operations manager, was seriously ill. In February 2011, Defendants notified Plaintiff that they were exercising their right to terminate the Agreement because of the breach.

**{5}**  Plaintiff asserts that his firing was orchestrated by Defendants Allin and Carroll as retaliation for his decision to go "up the chain of command" after they provided unsatisfactory responses to his allegations that a new Farmers agent, Tom Gutierrez, was "poaching" his clients. Plaintiff also claims that Defendant Carroll benefitted from Plaintiff's termination because his termination allowed Carroll to reassign half of Plaintiff's clients to Gutierrez. According to Plaintiff, if Gutierrez did not meet his quotas, while on probation, Carroll would have had to personally reimburse Farmers for "a portion of the subsidies fronted to Gutierrez."

**{6}**  Plaintiff's third amended complaint is the operative pleading, where he alleged eight causes of action: tortious interference with contract, tortious interference with prospective contractual relations, breach of contract, breach of the covenant of good faith and fair dealing, conspiracy, intentional infliction of emotional distress, prima facie tort, and violations of the New Mexico Insurance Code. Plaintiff also sought punitive damages.

3

Through several motions for summary judgment, the district court dismissed all claims except tortious interference with contract, breach of the covenant of good faith and fair dealing, conspiracy, and prima facie tort. Specifically, with respect to the breach of contract claim, the district court determined "as a matter of law that Plaintiff was responsible for the acts of [his employee] even if they were contrary to his instructions." Plaintiff did not appeal the dismissal of his contract claim. Plaintiff also decided to forego the claims of tortious interference with an existing contract and breach of the covenant of good faith and fair dealing, believing that the district court's dismissal of the breach of contract claim precluded them.

**{7}** After the court ruled in favor of Defendants on the breach of contract claim Defendants filed a renewed summary judgment motion on prima facie tort (Renewed Summary Judgment Motion). Defendants argued that Plaintiff's claim should be dismissed for three reasons:

> First, because the Contract Companies undisputedly had the right to terminate the Agreement, Plaintiff cannot demonstrate a "legally protectable interest" in the continuation of that Agreement, as required under New Mexico law to show a legally redressable injury. Any questions as to intent to injure are, therefore, immaterial (there being no legally redressable injury). Second, allowing tort recovery for a lawful contract termination impermissibly repackages a contract claim as a tort, contrary to New Mexico law. Third, Plaintiff cannot use prima facie tort to evade the more stringent requirements of claims already dismissed.

At the hearing on Defendants' Renewed Summary Judgment Motion, the judge explained that she was denying Defendants' motion in part because it was up to the jury to determine whether Defendants' conduct was justified.

**{8}** Ultimately, Plaintiff was allowed to present the prima facie tort and conspiracy claims to the jury. The jury found that Craig Allin, Lance Carroll, and all corporate Defendants committed prima facie tort but that no Defendants conspired to commit prima facie tort. The jury awarded Plaintiff $1,000,000 in compensatory damages and $2,500,000 in punitive damages. The court entered judgment against Defendants. A divided Court of Appeals affirmed the jury verdict. *See Beaudry v. Farmers Ins. Exch.*, 2017-NMCA-016, ¶ 3, 388 P.3d 662.

## II.   A DE NOVO STANDARD OF REVIEW APPLIES TO DISPOSITIVE LEGAL ISSUES

**{9}** The dispositive legal issues in this case were presented to the district court in Defendants' Renewed Summary Judgment Motion. Generally, we will not review the denial of a summary judgment motion after the trial court has entered a final judgment on the merits of the case. *Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 19, 106 N.M. 523,

4

746 P.2d 152. However, "[w]here a motion for summary judgment is based solely on a purely legal issue which cannot be submitted to the trier of fact, and the resolution of which is not dependent on evidence submitted to the trier of fact, . . . the issue should be reviewable on appeal from the judgment." *Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 10, 123 N.M. 362, 940 P.2d 468. When it is appropriate to review the denial of a motion for summary judgment we will apply a de novo standard of review. *Kipnis v. Jusbasche*, 2017-NMSC-006, ¶ 10, 388 P.3d 654. Defendants' Renewed Summary Judgment Motion presented a purely legal basis on which the court could have granted summary judgment. As such, de novo review is the appropriate standard in this case.

## III.    SCOPE OF DISCUSSION

{10}    In 1990, New Mexico joined a minority of other jurisdictions in recognizing a stand-alone claim for prima facie tort. *See Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 11, 109 N.M. 386, 785 P.2d 726 (citing authority from New York and Missouri to support the elements of prima facie tort); James P. Bieg, *Prima Facie Tort Comes to New Mexico: A Summary of Prima Facie Tort Law*, 21 N.M. L. Rev. 327 (1991)(discussing *Schmitz* and reviewing the history, jurisdictional recognition, and use of prima facie tort law); Dan B. Dobbs et. al., *The Law of Torts* § 643 (2d ed. 2011) ("The only significant jurisprudence on the prima facie tort is found in the courts of Missouri, New Mexico and New York and in the Restatement Second of Torts."). To bring a successful prima facie tort claim a plaintiff must show "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 10, 123 N.M. 774, 945 P.2d 992.

{11}    Defendants concede that the lawful act requirement is satisfied. However, Defendants argue that Plaintiff cannot meet the intent, injury, or justification element of prima facie tort and that Plaintiff is using prima facie tort to evade the stringent requirements of other established doctrines. Justification, which includes an analysis as to whether Plaintiff's prima facie tort claim evades stringent requirements of other established legal doctrines, is the dispositive issue in this case.

## IV.    DEFENDANTS WERE JUSTIFIED AS A MATTER OF LAW IN EXERCISING THEIR CONTRACTUAL RIGHT

### A.    If a Plaintiff's Theory of Prima Facie Tort Undermines an Important Restriction Based on an Established Cause of Action, a Defendant's Conduct May Be Justified as a Matter of Public Policy

{12}    We have adopted the Restatement (Second) of Torts balancing test to determine whether a party's justification for the injurious act outweighs the culpability of the party's conduct. *Schmitz*, 1990-NMSC-002, ¶¶ 41, 46 (citing Restatement (Second) of Torts § 870 (Am. L. Inst. 1979)). The culpability of the actor's conduct is measured by looking at three

5

factors: "(1) the nature and seriousness of the harm to the injured party . . . (3) the character of the means used by the actor and (4) the actor's motive." *Id.* ¶ 41. Courts must then weigh the culpability of the conduct against what may justify it, "(2) the nature and significance of the interests promoted by the actor's conduct." *See id.* ¶¶ 40-41. When weighing the seriousness of the harm, "physical, concrete harm is weighed more heavily than emotional or prospective economic harm"; when weighing the character of the means used, "conduct offensive to society's concepts of fairness and morality favors liability"; when weighing motive, "the degree of malice is significant"; and when weighing the interest promoted by the actor's conduct, "the court must consider established privileges or rights." *Id.* ¶ 65.

**{13}** The Restatement provides guidance on how to determine whether a defendant's interest is justified by comparing the plaintiff's claim to other established intentional torts and determining what privileges the defendant would be able to claim if the plaintiff was proceeding under an established intentional tort. *See* Restatement (Second) of Torts § 870 cmt. g, j. A judge must also engage in this comparison process to make certain that the plaintiff's prima facie tort claim is not being "used to evade stringent requirements of other established doctrines of law." *Schmitz*, 1990-NMSC-002, ¶ 63. Under the Restatement, when the prima facie tort claim is "closely related to an established tort," the court should apply the privileges and defenses that would exist if the plaintiff was proceeding under the established tort claim. *See* Restatement (Second) of Torts § 870 cmt. j. If, on the other hand, the prima facie tort claim advances an "entirely novel" cause of action the court must decide what privileges are most appropriate given the claim's similarity to other "established torts." *Id.* The mere existence of an applicable privilege does not end the inquiry because prima facie tort is designed to potentially expand the scope of established torts. *See Schmitz*, 1990-NMSC-002, ¶ 49 (acknowledging that "tort law is not static–it must expand to recognize changing circumstances that our evolving society brings to our attention"). The court must look at the importance of the privilege. Restatement (Second) of Torts § 870 cmt. j. If an applicable privilege "expresses an important policy of the law against liability" that would be undermined by allowing a prima facie tort claim, then the court should generally not allow prima facie tort to proceed unless the other justification factors weigh strongly in favor of finding liability. *Id.* cmt. j.

**{14}** New Mexico's approach is slightly different from the Restatement in that we chose not to limit the analysis to whether a prima facie tort claim evades only other established tort doctrines–courts must also ensure that a prima facie tort claim does not evade other established doctrines of law generally. *See Schmitz*, 1990-NMSC-002, ¶ 63 (emphasizing that "prima facie tort cannot be used to avoid [the] employment at will doctrine" (citing *Lundberg v. Prudential Ins. Co. of America*, 661 S.W.2d 667, 671 (Mo. Ct. App. 1983))). If the gravamen of the plaintiff's claim falls into an established doctrine, the court must ask why the plaintiff could not proceed under that doctrine. If the answer is that the plaintiff's claim was subject to a defense or that the established claim limited the type of damages that could be recovered, then the court must look at the "nature" of the limitation and determine whether it "expresses an important policy of the law against liability" that would be undermined by allowing a prima facie tort claim. *See* Restatement (Second) of Torts § 870

6

cmt. j.

**{15}** The following cases are examples of when New Mexico courts have concluded that a prima facie tort claim could not proceed because of policy considerations. In *Guest v. Allstate Insurance Co.*, we held that an attorney could not use prima facie tort to recover lost future earnings from a client because doing so would undermine the prohibition against allowing lawyers to recover unearned fees. 2010-NMSC-047, ¶¶ 47-51, 149 N.M. 74, 244 P.3d 342 (discussing the holding). In *Andrews v. Stallings*, the Court of Appeals upheld the dismissal of the plaintiffs' prima facie tort claim because permitting the claim would have allowed the plaintiffs "to circumvent the established defenses to defamation." 1995-NMCA-015, ¶ 64, 119 N.M. 478, 892 P.2d 611; *see also Stock v. Grantham*, 1998-NMCA-081, ¶¶ 38-39, 125 N.M. 564, 964 P.2d 125 (upholding the dismissal of prima facie tort because "[t]he only function of the claim of prima facie tort in [plaintiff's] complaint is to escape possible restrictions imposed on the torts of intentional infliction of emotional distress and interference with entitlement to unemployment compensation"); *Padwa v. Hadley*, 1999-NMCA-067, ¶ 27, 127 N.M. 416, 981 P.2d 1234 (holding that the defendant's conduct did "not rise to the level of extreme and outrageous behavior which cannot be the basis for recovery in tort" and therefore prima facie tort should not be used as a "substitute theory").

**{16}** The defendant has the initial burden of pleading an applicable justification or defense. *See Schmitz*, 1990-NMSC-002, ¶ 46 ("[I]f a defendant offers a purpose other than the motivation to harm the plaintiff as justification for his actions, that justification must be balanced to determine if it outweighs the bad motive of the defendant in attempting to cause injury.") A judge must weigh justification against culpability to determine whether any privileges or defenses will absolve the defendant before submitting prima facie tort to the jury. *See* Restatement (Second) of Torts § 870 cmt. k. When the facts concerning culpability and justification are not in dispute then the question is a purely legal issue for the judge to decide. If the existence of a privilege depends on an issue of material fact, then the judge must explain to the jury what it needs to find in order for the privileges to apply. Restatement (Second) of Torts § 870 cmt. k.

**B.      Allowing Plaintiff to Proceed with a Claim of Prima Facie Tort Would Undermine Important Restrictions In Contract Law**

**{17}** The arguments presented to the district court at the summary judgment stage were sufficient to dispose of Plaintiff's prima facie tort claim. In their Renewed Summary Judgment Motion, Defendants argued (1) that their actions in terminating the Agreement were justified because the court found that Plaintiff had breached the Agreement, (2) that allowing Plaintiff to proceed would sanction his evasion of the stringent requirements of his claims against Defendants for breach of contract and intentional interference with contract that Plaintiff failed to prove, and (3) that allowing Plaintiff's prima facie tort claim would undermine the freedom of contract. Plaintiff responded to Defendants' Renewed Summary Judgment Motion by arguing that he was not evading other doctrines because the court's

previous ruling had left prima facie tort as his only viable remedy. He alleged that the holdings in *Schmitz* and *Portales National Bank v. Ribble*, 2003-NMCA-093, 134 N.M. 238, 75 P.3d 838, showed that the Court was willing to allow prima facie tort when the "root complaint sounded in contract." And, Plaintiff contended that weighing justification against culpability favored finding Defendants liable because Plaintiff suffered "severe" harm; because Defendants' actions were "unfair, and their motives were impure"; and because Defendants' actions did not advance any "legitimate interest."

{18}    The fact that Plaintiff's other tort and contract claims were dismissed by the court or of Plaintiff's own volition does not disprove that Plaintiff is evading the stringent requirements of other established doctrines of law. It only shows that Plaintiff was unable to prove the elements of the dismissed claims or overcome any defense against those claims. The question is whether allowing prima facie tort would undermine an important policy rationale supported by the limits on the evaded claims.

{19}    The cases Plaintiff cites for the proposition that courts have been willing to allow prima facie tort where the "root complaint sounded in contract" do not provide support for us to impose prima facie tort liability in this case. In *Portales*, the court never examined whether imposing tort liability on the defendant bank would undermine the policies supported by contract law. *See* 2003-NMCA-093, ¶¶ 11-12. Instead, the court focused on the question whether allowing the plaintiffs to proceed with a prima facie tort claim would undermine the policies supported by the doctrine of intentional infliction of emotional distress. *Id*. Moreover, it is not clear that the defendant's injurious actions in *Portales* were contractually authorized. *Id*. ¶ 6.[1] Similarly, in *Schmitz* we never specifically addressed the issue of whether allowing the plaintiff to recover would infringe on the defendant's privilege to exercise a contractual right. *See Schmitz*, 1990-NMSC-002, ¶¶ 65-66. This was likely due to the unique factual setting of the case. In *Schmitz*, the defendant bank loaned money to a third party. *Id*. ¶ 4. The third party used a note that he was holding in trust for the plaintiffs as collateral to obtain the loan. *Id*. ¶¶ 3-4, 33. The bank accepted the note as collateral with knowledge that the third party did not actually have an interest in it. *Id*. ¶ 4. The plaintiffs in *Schmitz* never consented to the defendant bank taking the note as collateral or to the bank's decision to eventually redirect payment on the note when the third party defaulted. *See id*. ¶ 3-4. Hence, we concluded that there was actually no privilege for the harm that the defendant bank inflicted. *Id*. ¶ 66 ("[A]lthough under other circumstances the Bank would be privileged to protect its loan and move against the collateral, the Bank's knowledge that it had no interest in the note negates its right to move against it.").

---

[1]For example, the plaintiffs in *Portales* argued that the defendant bank encouraged them to take out a mortgage based on false assurances relating to overdraft charges, provided another bank with incorrect information about the plaintiffs to prevent them from being able to take their business elsewhere, and "made intentional misrepresentations to [the plaintiffs] for the purposes of acquiring a default judgment against them." 2003-NMCA-093, ¶ 6.

**{20}** With respect to weighing Defendants' justification against Defendants' culpability, Plaintiff argues that his harm was severe and that Defendants' bad motives negated any claim of privilege. The first question the court should have determined is what privilege or defense should apply. Defendants argued that their contract right privileged them to terminate the Agreement. Indeed New Mexico has a public policy that favors the freedom to contract. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 18, 147 N.M. 678, 228 P.3d 462 ("[M]eeting . . . statutory and regulatory requirements plainly conditions freedom of contract. . . ."); *Gen. Elec. Credit Corp. v. Tidenberg*, 1967-NMSC-126, ¶ 14, 78 N.M. 59, 428 P.2d 33 ("[P]ublic policy encourages freedom between competent parties of the right to contract, and requires the enforcement of contracts, unless they clearly contravene some positive law or rule of public morals."). We agree that a contract right was an appropriate privilege under the facts of this case.

**{21}** To determine the privileges and defenses applicable to Plaintiff's claim the court should have looked at the "gravamen of his complaint." *Cf. Knapp Engraving Co. v. Keystone Photo Engraving Corp.*, 148 N.Y.S.2d 635, 637 (N.Y. App. Div. 1956) ("A cause of action, however, must be judged by its allegations, not its label."). Here, Plaintiff's complaint makes it clear that the gravamen of his cause of action was based on the allegedly wrongful termination of the Agreement. In his complaint, Plaintiff alleged that Defendants' tortious action was intentionally terminating the Agreement. Plaintiff discussed other conduct in his complaint, such as the manner in which Defendants reviewed their decision to terminate the Agreement, but at the hearing on the motion for summary judgment, Plaintiff explained that he only sought to use these other actions as evidence of Defendants' malicious intent when they terminated the Agreement. Therefore, the primary act underlying the claim for prima facie tort was the decision to terminate the Agreement. Whether a party has the right to terminate a contract is squarely a question of contract law. *Martinez v. Rocky Mountain & S.F. Ry. Co.*, 1935-NMSC-059, ¶ 10, 39 N.M. 377, 47 P.2d 903 ("[A] party relying upon . . . a right of termination [must] point to a provision of the contract plainly giving such right . . . .").

**{22}** The closest analogy to Plaintiff's prima facie tort claim would be a claim for breach of the implied covenant of good faith and fair dealing. At its core, Plaintiff's prima facie tort allegation was that Defendants used the terms of the Agreement to intentionally injure him and to satisfy their selfish desires. A breach of the implied covenant of good faith and fair dealing arises when "one party wrongfully and intentionally use[s] the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 144 N.M. 449, 188 P.3d 1200 (internal quotation marks and citation omitted).

**{23}** We impose several restrictions on breach of the implied covenant claims. Most important is that "fully integrated, clear, and unambiguous," termination provisions are legally enforceable and override a claimed breach of the covenant of good faith and fair dealing when there is no showing that the provisions of the contract were arrived at by "fraud, or unconscionable conduct." *Melnick v. State Farm Mut. Auto. Ins. Co.*,

9

1988-NMSC-012, ¶¶ 17-18, 106 N.M. 726, 749 P.2d 1105 (internal quotation marks and citation omitted). Such "provisions must ordinarily be enforced as written," and courts must refuse to allow a claim for breach of the implied covenant of good faith and fair dealing. *Id. ¶ 17.* Additionally, we have held that "tort remedies are not available" for a breach of the implied covenant of good faith and fair dealing in the context of an employment contract. *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 17, 117 N.M. 434, 872 P.2d 852.

**{24}** The restrictions on breach of the implied covenant of fair dealing claims are intended to ensure that the court only intervenes to protect the "justified expectations of the other party," Restatement (Second) of Contracts § 205 (1981), and not to "change or modify the language of an otherwise legal contract for the benefit of one party and to the detriment of another." *Melnick*, 1988-NMSC-012, ¶ 17. Contracts allow parties to come to legally enforceable agreements about the way that they will interact with one another. *See* 17 C.J.S. *Contracts* § 2 (2017) ("[T]he purpose of a contract is to reduce to writing the conditions on which the minds of the parties have met and to fix their rights and duties with respect thereto."). And, we have emphasized that "[g]reat damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 20, 134 N.M. 341, 76 P.3d 1098 (quoting *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 14, 108 N.M. 467, 775 P.2d 233).

## C. When Weighing Justification and Culpability We Determine That the Culpability Factors do not Weigh Heavily Enough to Convince Us That Prima Facie Tort Liability Is Appropriate When a Defendant Exercises an Expressly Authorized Contractual Right

**{25}** Comparing Plaintiff's prima facie tort claim with a breach of contract claim and with the claim of breach of the covenant of good faith and fair dealing convinces us that the appropriate privilege here is the privilege to engage in conduct that is authorized by the express terms of a contract. We have also determined the purpose of the contract privilege is to support certainty and predictability in relationships that parties voluntarily assume. *See Berlangieri*, 2003-NMSC-024, ¶ 20. This privilege and the public policy rationale underlying it provide a strong justification for Defendants' conduct. We now proceed to weigh the contract justification privilege against the culpability factors that we adopted in *Schmitz* to determine whether Plaintiff should be allowed to overcome the privilege and evade the restrictions that would be placed on his claim if he sued under contract law.

**{26}** The first culpability factor is the "nature and seriousness of the harm to the injured party." *Schmitz*, 1990-NMSC-002, ¶ 65. Here, the harm was significant; Plaintiff lost the benefit of a lucrative agency relationship. He also claims to have suffered emotional harm arising from the manner and timing of his termination. However, the loss of the agency relationship is not some unforeseeable or unusual injury that warrants a novel application

10

of tort law as a remedy. Rather, the terms by which the Agreement, or any contract, can be terminated should be—and in fact were—agreed to in advance when the contract was formed. We have also held that "damages for emotional distress are not recoverable in an action for *breach* of an employment contract, whether express or implied, in the absence of a showing that the parties contemplated such damages at the time the contract was made." *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.*, 1987-NMSC-045, ¶ 8, 106 N.M. 19, 738 P.2d 513 (emphasis added). Hence, it would make little sense for us to allow emotional distress damages to be recoverable when there is no breach by Defendants who simply followed the unambiguous terms of the agreement.

**{27}**    The second culpability factor is "the character of the means employed by the actor." *Schmitz*, 1990-NMSC-002, ¶ 66. Here, a contract was the means used to inflict the injury that Plaintiff alleges to have suffered. In *Schmitz*, we determined that the means the bank used to inflict injury on plaintiffs weighed in favor of liability because the bank knew it had no legitimate interest in taking action on the note and acted without privilege. *Id.* ¶ 65. Here, the district court was faced with the opposite situation where Defendants had already proved that they did have a legitimate right to terminate the Agreement. We see nothing "offensive to society's concepts of fairness and morality" about one party to a contract exercising a right to terminate a contract for an expressly authorized reason. *Schmitz*, 1990-NMSC-002, ¶ 65.

**{28}**    The third culpability factor is "the actor's motive." *Schmitz*, 1990-NMSC-002, ¶ 65. The Restatement (Second) recognizes that consent can be a defense to prima facie tort "if freely given by a person of full capacity and not against public policy." Restatement (Second) of Torts § 870 cmt. n. Here, Plaintiff actually consented to the contract that allowed Defendants to engage in the conduct that he now alleges to be tortious. When consent is established, consent "negatives the wrongful element of the defendant's act, and prevents the existence of a tort." William L. Prosser and W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 18 (5th ed. 1984). Writing on the question of justification, Justice Oliver Wendell Holmes observed that some privileges are so absolute that their power "is not affected by the motive" of the party exercising the privilege. *See* Oliver Wendell Holmes, Jr., *Privilege, Malice, and Intent*, 8 Harv. L. Rev. 1, 4 (1894). Here, the district court had already determined that Defendants had the contractual right to terminate the agreement by the time Defendants raised their Renewed Summary Judgment Motion. Accordingly, we conclude that an inquiry into their subjective motives for exercising that right could not produce evidence sufficient to warrant the imposition of tort liability.

## V.    CONCLUSION

**{29}**    For the foregoing reasons the Court of Appeals and District Court are reversed and this matter is remanded to the District Court to enter judgment in favor of Defendants.

**{30}**    **IT IS SO ORDERED.**

11

                                     _____
                                     **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**GARY L. CLINGMAN, Judge**
**Sitting by designation**