**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

J. CASPER HEIMANN; JAY DEE
HEIMANN,

     Plaintiffs-Counter-Defendants-
     Appellants,

v.

RAY A. SNEAD; CLAIRE W. SNEAD;
WILL SNEAD; RAY SNEAD, JR.; TOM
M. HILLS; ANN B. HILLS, doing
business as Alamo Ranch,

     Defendants-Counter-Claimants-
     Appellees.

No. 96-2266

(D.C. No. CIV-94-817-LH)
(D.N.M)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK** and **HOLLOWAY**, Circuit Judges, and **BROWN**, Senior District
Judge.[**]

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable Wesley E. Brown, Senior United States District Judge for the
District of Kansas, sitting by designation.

In a seven-count complaint bringing to mind images of New Mexico's territorial days, Plaintiffs sought judicial redress for numerous alleged improprieties relating to what they characterize as Defendants' violent, forcible, and vigilante-like ejection of Plaintiffs and Plaintiffs' cattle from New Mexico State Grazing Lease GS-1239. As grounds for relief, Plaintiffs advanced numerous state law theories before the district court including: Count I-prima facie tort, Count II-interference with contractual relations, Count III-conversion of livestock, Count IV-intentional infliction of emotional distress, Count V-assault, Count VI-wrongful ejectment, and Count VII-trespass. The district court disposed of several of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). The remaining claims were either voluntarily dismissed with prejudice by Plaintiffs or decided adversely to them on Defendants' motion for summary judgment. On appeal, Plaintiffs seek reversal of the district court's orders disposing of their state law claims. Plaintiffs also ask that we remand the case for further discovery. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## I.

For several years during the early 1990s, Plaintiffs leased a large ranch in Harding County consisting of both fee land and a state grazing lease from Plaintiff J. Casper Heimann's sister and brother-in-law, Johnanne and Bobby Adee. During that time, the Adee's found themselves the subject of a lawsuit which left them in dire financial straits. The record suggests that the Adees filed a written document with the Union County

clerk's office which defamed the First National Bank in Clayton, the bank's president Craig L. Reeves, the bank's lawyer Robert O. Beck, and Beck's law firm Beck and Cooper, Lawyers. The parties tried the case before the Union County district court, which ruled in plaintiffs' favor and awarded them a total of $2.4 million against the Adees. In addition to being a judgment creditor, the First National Bank of Clayton also held a mortgage on a portion of the Adees' property. Soon thereafter, the Bank as mortgagee, joined by the judgment creditors, instituted foreclosure proceedings which culminated in a sheriff's sale of the Adees' state lease lands.

Defendants acquired the Adees' state lease lands at the sheriff's sale on November 16, 1993. Plaintiffs attended the sheriff's sale and unsuccessfully bid on the Adees' state lease lands. On November 27, 1993, Harding County Sheriff Ray Gutierrez assigned the state grazing lease to Defendants. Defendants filed the assignment with the New Mexico State Land Office on January 4, 1994, and the State Land Office approved the lease on January 5, 1994. Upon purchase of the disputed lands at the sheriff's sale, Defendants filed agistor's liens in Union County covering cattle owned by Plaintiffs and additional parties who sub-leased pasture from Plaintiffs.[1]

On January 10, 1994, having been advised by their lawyer that they were entitled to possession of the state lease, Defendants asked Plaintiffs to remove their cattle from

---

[1] Plaintiffs allege that Defendants "recklessly and maliciously" filed these liens on their cattle. Aside from this conclusory allegation, the record is conspicuously devoid of evidence supporting such a theory.

3

the state grazing lease. When Plaintiffs did not agree to remove their cattle, Defendant Ray Snead informed them that he and his cowboys were going to move the cattle at 1:00 p.m. unless Plaintiffs agreed to move them. Plaintiff Jay Dee Heimann objected to Defendants moving the cattle off of the leasehold. Defendants ignored Plaintiffs' objection and proceeded to round-up and drive Plaintiffs' cattle off of the land. Plaintiff Jay Dee Heimann and his crew of cowboys then mounted their horses to prevent Defendants from moving the cattle. After several minutes of heated argument, Defendants abandoned their attempt to eject Plaintiffs' cattle from the state grazing lease to avoid injuring either party's cowboys or horses.

On January 12, Defendants and a crew of approximately ten cowboys returned to the state grazing lease before daylight. As Defendants began to drive the cattle off of the land, Plaintiffs and their cowboys arrived on the scene. Plaintiff Jay Dee Heimann and Defendant Ray Snead argued for approximately one hour about Defendants' attempt to eject Plaintiffs and their cattle from the lease. Plaintiffs' and Defendants' cowboys worked cooperatively to hold the cattle together while this argument ensued. Plaintiffs then climbed into Plaintiff J. Casper Heimann's pick-up, discussed the situation, and decided that they could not prevent the cattle from being driven off of the grazing lease. Thus, although they vocally objected, Plaintiffs made no further attempt to prevent Defendants and their large crew of cowboys from driving their cattle off of the land. Defendants and their crew then drove the cattle into a set of pens located on Plaintiffs' fee

4

land where Plaintiff Jay Dee Heimann and two of Defendants' cowboys counted the cattle and agreed that all were present. Plaintiffs allege that Defendants unnecessarily abused their cattle during this drive and that Defendants ran one cow to exhaustion.

After Defendants drove Plaintiffs' cattle into the cattle pens and released them onto Plaintiffs' and Defendants' common fee land pasture, the parties agreed that Plaintiffs' cattle could water at Defendants' windmill. The next day, Plaintiffs repaired the windmill and placed water tanks around it so the cattle could drink. Several days later, however, Defendants fenced Plaintiffs' cattle off of the water, removed drain plugs in the water tanks and chained the windmill to prevent Plaintiffs from using it.[2]

On July 19, 1994, Plaintiffs J. Casper Heimann and Jay Dee Heimann instituted this diversity action under 28 U.S.C. § 1332 in the district court. Their seven-count complaint alleged numerous improprieties in connection with the mortgage foreclosure and sale of state grazing lease GS-1239, to which they claimed prior rights under lease and sublease. Plaintiffs claimed that Defendants, who purchased rights to the grazing lease at the Sheriff's sale, unlawfully infringed upon those rights. Defendants denied Plaintiffs' allegations and counterclaimed, alleging two counts of trespass.

After a hearing, the district court granted Defendants' motion to dismiss four counts of Plaintiffs' complaint for failure to state a claim upon which relief could be

---

[2] The record suggests that, Defendants' attorney notified Plaintiffs' attorney that after a certain date the cattle would no longer have access to Defendants' water source.

granted. Following discovery, the district court granted Defendants' motion for summary judgment on Plaintiffs' claims of prima facie tort, assault, and conversion as to four head of cattle, leaving only Plaintiffs' and Defendants' trespass claims for trial.

Because Plaintiffs wished to appeal the district court's dismissal and summary judgment orders, the parties submitted a stipulation to the district court in which Plaintiffs agreed to dismiss the only remaining count of their complaint with prejudice and Defendants agreed to dismiss their counterclaims without prejudice. See Fed. R. Civ. P. 41. The district court accepted the stipulation, dismissed all remaining claims, and concluded that "the matter is now final and immediately appealable."

Plaintiffs timely filed their notice of appeal. Upon review of the jurisdictional issue, we determined that absent a final dispositive adjudication or Fed. R. Civ. P. 54(b) certification from the district court, we lacked jurisdiction over the appeal. 133 F.3d 767, 770 (10th Cir. 1998). We therefore allowed the parties to return to the district court to obtain a Rule 54(b) certification.[3] The district court certified Plaintiffs' claims pursuant to Rule 54(b). With this background in mind, we turn to the present appeal.

---

[3] Plaintiffs' complaint, which alleges damages in excess of $50,000, was filed before Congress raised the amount-in-controversy requirement to $75,000. Federal Courts Improvement Act of 1996, 110 Stat. 3847. Therefore, the increased amount-in-controversy requirement has no effect on this appeal. See Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 n.9 (7th Cir. 1997); Conntech Dev. Co. v. University of Conn. Educ. Prop., Inc., 102 F.3d 677, 681 n.1 (2d Cir. 1996).

II.

The district court, pursuant to Fed. R. Civ. P. 12(b)(6), dismissed Plaintiffs'

conversion, wrongful ejectment, and intentional infliction of emotional distress claims.

We review the district court's 12(b)(6) dismissal of each count de novo. Bauchman v.

West High School, 132 F.3d 542, 550 (10th Cir. 1997). In reviewing the sufficiency of

Plaintiff's complaint, we presume the factual allegations contained in the four corners of

the complaint are true and construe them in a light most favorable to Plaintiffs.[4] Id.

A.

Plaintiffs first argue that the district court erred by dismissing their conversion

claim. Specifically, Plaintiffs contend that their complaint, when construed in a light

most favorable to them, alleges facts which state a cause of action for conversion. We

agree.

Under New Mexico law, "[c]onversion is defined as the [wrongful or] unlawful

exercise of dominion and control over personal property belonging to another in

exclusion or defiance of the owner's rights, or acts constituting an unauthorized and

injurious use of another's property, or a wrongful detention after demand has been made."

Nosker v. Trinity Land Company, 757 P.2d 803, 807-08 (N.M. Ct. App. 1988). An action

for conversion is appropriate even if the converted property is returned to its rightful

_____

[4] Confining our review to the four corners of the complaint, we express no opinion on whether, after further proceedings, Plaintiffs' claims will survive a motion for summary judgment.

7

owner. The only effect of the property's eventual return is an adjustment to the amount of damages. See Martinez v. Vigil, 142 P. 920, 921 (N.M. 1914); Restatement (Second) of Torts § 922. Thus, where someone converts another's property to his own use and eventually returns it to the rightful owner, the fact that the property has been returned will not bar a suit for conversion.

The facts alleged in Plaintiffs' complaint, when presumed to be true and viewed in a light most favorable to Plaintiffs, state a claim for conversion. Plaintiffs allege that: (1) Defendants wrongfully converted to their own use 150 head of Plaintiffs' cattle worth $120,000; (2) Plaintiffs demanded that Defendants return the cattle; (3) Defendants refused to return the cattle and continued to exercise dominion and control over the animals; and (4) the animals were treated improperly and damaged. These allegations meet the minimum requirements necessary to state a claim for conversion.

B.

Plaintiffs next argue that the district court erroneously dismissed their claim for wrongful ejectment. Plaintiffs contend that where a person wishing to gain possession of property occupied by another has access to a speedy judicial remedy for recovering possession, but chooses instead to use self-help to dispossess the occupant, the occupant may recover damages from the person who resorted to self-help. Defendants quickly defend the district court's dismissal of this claim by suggesting that no cause of action for "wrongful ejectment" exists in New Mexico. Moreover, Defendants claim that because

8

Plaintiffs had no valid interest in the land from which Defendants ousted them, they cannot maintain an action for wrongful ejectment. The thrust of this argument appears to be that an ejection cannot be wrongful if the person being ejected did not have legal possession of the property. We disagree.

New Mexico's forcible entry and detainer statute provides a speedy judicial remedy for ousting a person in peaceable possession of real property. N.M. Stat. Ann. § 35-1-1 (Michie 1978). The policy behind the statute is to "prevent parties from taking the law into their own hands, and ousting one in quiet, peaceable possession of lands and tenements, whether his possession is rightful or wrongful." State v. Ashley, 772 P.2d 377, 380 (N.M. Ct. App. 1989). New Mexico courts have long embraced this policy and have recognized that the use of self-help to oust a party in wrongful possession of land is tortious. Id.; Murrah v. Acrey, 142 P. 143, 144 (N.M. 1914). Thus, when one party wrongfully, but peacefully occupies property to which another is rightfully entitled to possess, the "party out of possession must resort to legal means to obtain . . . possession." Id. at 380-81 (quoting Murrah v. Acrey, 142 P. 143, 144 (1914)); see also Heron v. Ramsey, 117 P.2d 247, 249 (N.M. 1941); Restatement (Second) of Property § 14.2(1). If instead, a party entitled to possession resorts to self-help to oust another from the property, the ousted party may recover damages from the party using self-help. See Restatement (Second) of Property § 14.2(1) cmt. e.

Plaintiffs' complaint alleges that: (1) Plaintiffs peacefully possessed State Grazing

9

Lease GS-1239; (2) Defendants, without legal process, violently and forcefully entered upon the grazing lease; and (3) Defendants overpowered Plaintiffs and ejected them from the grazing lease. Taking these allegations as true and viewing them in a light most favorable to Plaintiffs, we conclude that Plaintiffs' complaint states a claim for which New Mexico law provides relief.

C.

Plaintiffs next contend that the district court erroneously dismissed their intentional infliction of emotional distress claim. Specifically, Plaintiffs argue that their emotional distress claims were inappropriate for Fed. R. Civ. P. 12(b)(6) dismissal because reasonable minds could differ as to whether Defendants' conduct was "extreme and outrageous." We agree.

"Intentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct." Jaynes v. Strong-Thorne Mortuary, Inc., 1997 WL 836532 at *5 (N.M. 1997) (quoting Dominguez v. Stone, 638 P.2d 423, 426 (N.M. Ct. App. 1981)). Extreme and outrageous conduct is conduct which goes "beyond the bounds of common decency and is atrocious and intolerable to the ordinary person." Jaynes, 1997 WL 836532 at *5. In addition, the emotional distress caused by the extreme and outrageous act must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Id. (citations omitted). Because the

10

standard for proving extreme and outrageous conduct and severe emotional distress is rigorous, the court must determine, in the first instance, whether Defendants' conduct is so extreme and outrageous that recovery is in order. Restatement (Second) of Torts § 46 cmt. h. Where the court determines that reasonable minds may differ in regards to the outrageous nature of the conduct alleged, the claim is not properly decided on a motion to dismiss. See Id.

Plaintiffs' complaint alleges that: (1) Plaintiffs possessed and grazed cattle on the state grazing lease; (2) Defendants and their agents violently forced Plaintiffs from their land and over Plaintiffs' objection took possession of Plaintiffs' cattle; (3) Defendants improperly treated Plaintiffs' cattle; (4) Defendants intended to cause Plaintiffs emotional distress; and (5) Defendants' actions resulted in Plaintiffs suffering severe emotional distress, horror, fright, anger, worry, disappointment and humiliation. While we state no opinion on the merit of this claim, presuming these allegations to be true and viewing them in a light most favorable to Plaintiffs, we conclude Plaintiffs' complaint meets the minimum threshold for stating a claim for intentional infliction of emotional distress. C.f. Gracia v. Bittner, 900 P.2d 351 (N.M. Ct. App. 1995) (Affirming jury verdict awarding damages for intentional infliction of emotional distress where landlord, with no resort to violence, used self-help means to eject tenant from property while tenant out of town.).

III.

Upon completion of discovery, Defendants filed a motion for summary judgment on Plaintiffs' remaining claims. In a thorough and well-reasoned opinion, the district court granted summary judgment in favor of Defendants on Plaintiffs' assault, conversion of four head of cattle, and prima facie tort claims. We review the district court's grant of summary judgment de novo. United States v. Jenks, 129 F.3d 1348, 1352 (10th Cir. 1997).

A.

Plaintiffs argue that the district court erred in granting Defendants' motion for summary judgment on their prima facie tort claim. Specifically, Plaintiffs contend that the district court failed to recognize disputed issues of material fact which precluded disposition of the claim on summary judgment. We disagree.

"Prima facie tort occurs when a lawful act is conducted with an intent to injure and without sufficient economic or social justification, resulting in injury." Lexington Insurance Co. v. Rummel, 945 P.2d 992, 995 (N.M. 1997). Generally stated, the elements of prima facie tort are: (1) commission of an intentional lawful act; (2) the act is conducted with the intent to injure Plaintiff; (3) the act injures Plaintiff; and (4) the act is without social or economic justification or has insufficient justification. Schmitz v. Smentowski, 785 P.2d 726, 734 (N.M. 1990). Where there is no intent to injure, the analysis ends. Where there is some evidence of an intent to injure, however, a balancing

12

test must be applied.  Lexington, 945 P.2d at 995.

In applying the balancing test, we must balance the activity complained of against any justification for the activity and the severity of the injury, "weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances."  Schmitz, 785 P.2d at 734.  The balancing process does not end here, however.  Instead, the court must weigh the above factors in light of the following additional factors: "(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor, and (4) the actor's motive."  Id.

The district court noted that Defendant Ray Snead's statement that he would "do everything in [his] power to break [Plaintiff J. Heimann]" demonstrated that Defendants' actions toward Plaintiffs were not entirely economically motivated and thus evidenced some intent to injure.  Accordingly, the district court embarked on a thorough balancing of the above listed factors and ultimately concluded that the Defendants' actions were justified under the circumstances.  We have reviewed the parties briefs and the entire record before us and conclude that the district court committed no reversible error by granting summary judgment on Plaintiffs' prima facie tort claim.

B.

Plaintiffs next complain that the district court erred by granting summary judgment in favor of Defendants on their assault claim.  Plaintiffs argue that the district court

ignored the fact that there was a material issue of disputed fact and improperly reached its decision by weighing the evidence before it.  We disagree.

For a tortious assault to occur, there must be an act, threat, or some other menacing conduct which causes another person to <u>reasonably</u> believe that he or she is in danger of receiving an immediate battery.  <u>Baca v. Velez</u>, 833 P.2d 1194, 1196 (N.M. Ct. App. 1992) (emphasis added).   After reviewing the entire record before us, we find no genuine issue of material fact which would prevent disposition of this issue on summary judgment.  The only support for Plaintiffs' claim is Plaintiff Jay Dee Heimann's statement that he was "afraid that blows were to be exchanged,"[5] Rec. at 673.  The remaining evidence, of which there is a great deal, demonstrates that Plaintiffs were not placed in a position where a reasonable person would believe he or she is in danger of receiving an immediate battery.  Without more support, Plaintiffs' allegations do not create a genuine issue of material fact.  Accordingly, the district court correctly disposed of the claim on summary judgment.

C.

Plaintiffs next argue that the district court erroneously granted Defendants' motion for summary judgment regarding the alleged conversion of four head of Plaintiffs' cattle. Our review of the record turns up only one piece of what we deem to be relevant evidence

---

[5]      Indeed, Plaintiff's statement indicates that he was going to participate in the "throwing" of those blows.

14

regarding the missing four head of cattle. That evidence is a self-serving statement by Plaintiff J. Casper Heimann, the basic thrust of which, suggests that Defendants were building fence in the vicinity of Plaintiffs' cattle, and after they finished four head were missing. A mere scintilla of evidence does not create an issue for trial, Headrick v. Rockwell International Corp., 24 F.3d 1272, 1275 (10th Cir. 1994), and a scintilla is all Plaintiffs presented to the district court. Viewing the evidence in a light most favorable to Plaintiffs, we conclude that the district court properly granted summary judgment on this issue in Defendants' favor.

IV.

Finally, Plaintiffs ask us to remand the case for further discovery. Specifically, Plaintiffs complain that after the magistrate granted their request to depose certain parties and obtain documents from them, he arbitrarily enforced a discovery deadline which prevented them from obtaining the relief granted. Thus, Plaintiffs argue that the case must be remanded for further discovery. We disagree.

It is well established that "the court of appeals cannot review a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A) unless the party requesting review objected to the order in writing to the district court within ten days of receiving a copy of the order." Pippinger v. Rubin, 129 F.3d 519, 533 (10th Cir. 1997). Plaintiffs concede that they did not object to the magistrate's enforcement of the discovery deadline to the district court. Instead, Plaintiffs urge that we adopt a more liberal interpretation of § 636(b)(1)(A)

15

which would allow for appellate review of the magistrate's non-dispositive order. Absent en banc reconsideration, we may not overrule prior circuit precedent. <u>Summum v. Callaghan</u>, 130 F.3d 906, 913 n. 8 (10th Cir. 1997). Therefore, because Plaintiffs clearly did not comply with § 636(b)(1)(A), we decline to review the magistrate judge's order enforcing the discovery deadline.[6]

V.

For the foregoing reasons, the district court's judgment is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge

---

[6] On November 26, 1996, Defendants filed a motion to dismiss Plaintiffs' appeal in part based on Plaintiffs' failure to comply with § 636(b)(1)(A). Defendants contend that absent Plaintiffs' strict compliance with § 636(b)(1)(A), we have no jurisdiction over this portion of the appeal. Because we decline to review Plaintiffs' appeal of the magistrate's order enforcing the discovery deadline, we deny Defendants' motion.