This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**VICTOR MAGALLANES,**

Plaintiff/Counterdefendant-Appellant,

v.                                                        **NO. 34,135**

**FARMERS INSURANCE COMPANY OF ARIZONA, a/k/a FARMERS' INSURANCE GROUP OF COMPANIES, and ADJUSTER BRANDEN MARSHALL,**

Defendants-Appellees,

and

**J.E.N.M., INC., d/b/a AMERICAN RESTORATION,**

Defendant/Counterclaimant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Johnson Barnhouse & Keegan LLP
Kelli J. Keegan
Justin J. Solimon
Los Ranchos de Albuquerque, NM

for Appellant

O'Brien & Padilla, P.C.

Daniel J. O'Brien
Erica R. Neff
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    Plaintiff Victor Magallanes appeals the district court's grant of summary judgment in favor of Farmers Insurance Company of Arizona (Farmers) and Adjuster Branden Marshall (collectively, Defendants).[1] While numerous tangentially related issues are raised, Plaintiff's appeal is essentially comprised of four arguments. The first argument asserts that the policy's "earth movement" provision is ambiguous as a matter of law. Plaintiff's second argument asserts that New Mexico should apply the efficient proximate cause doctrine to the facts of this case. Plaintiff's third argument asserts that, even if the "earth movement" provision is not ambiguous, the district court improperly granted summary judgment because the record evidence contains genuine disputes of material fact as to whether all claimed damages fall within the scope of the "earth movement" exclusion. Finally, Plaintiff asserts that, even if

---

[1]At trial, this case was captioned Victor Magallanes v. Farmers Insurance Company of Arizona, Adjuster Branden Marshall, and J.E.N.M. Inc. d/b/a American Restoration (American Restoration). American Restoration is not a party to this appeal. Because of the nature of the relationship between Magallanes and American Restoration, we consider American Restoration to be a defendant in name only. As such, any reference herein to "Defendants" includes only Farmers and Marshall.

summary judgment was properly granted as to coverage, the district court's grant of summary judgment on Plaintiff's associated common law and statutory claims was error.

{2}     Because we agree that the record contains evidence creating a genuine issue of material fact as to whether all of Plaintiff's claimed damages fall within the scope of the policy's "earth movement" exclusion, we reverse the district court's grant of summary judgment on all claims and remand for additional proceedings consistent with this opinion. As such, we do not reach the issue of whether Plaintiff's statutory and common law claims survive a no-coverage determination. As a consequence of our reversal and remand, other issues decided, or tacitly decided, by the district court's partial summary judgment order remain preliminary rulings and are not subject to appellate review.[2]

**BACKGROUND**

---

[2]The district court ruled in favor of Defendants with respect to the enforceability of the policy's "earth movement" exclusion. Though not expressly ruled upon, the district court's partial grant of summary judgment indicates findings that (1) the policy is not ambiguous as a matter of law and (2) the efficient proximate cause doctrine should not apply in this case. These determinations remain before the district court for its consideration on remand. *See Gates v. N.M. Taxation & Revenue Dep't*, 2008-NMCA-023, ¶ 8, 143 N.M. 446, 176 P.3d 1178 ("[P]artial summary judgment orders are not appealable final orders when other claims are left unresolved but, rather, can only be heard by this Court in an interlocutory appeal.").

{3}     Plaintiff lives in Albuquerque's South Valley with his partner, Lisa Ruiz, and her two grandchildren. Plaintiff's house sits upon concrete footings, which provide structural support, rather than a concrete slab foundation. These footings, as well as the house's plumbing infrastructure, are located in an enclosed crawl space under the house. On August 22, 2012, Plaintiff heard the sound of running water under the house and went outside to investigate. Plaintiff opened an access point to the crawl space and could hear, but not see, water leaking in the crawl space. While outside, Plaintiff noticed a crack in the stucco. Plaintiff turned off the water to his house, and the leak stopped. After turning off the water, Plaintiff called Farmers to report the incident. Plaintiff was instructed by Farmers to contact a certified plumber and have the leak fixed.

{4}     On August 25, 2012, a plumber came to Plaintiff's house to fix the leak. The plumber took several photographs of the leak and surrounding area both prior to and after making necessary repairs. In his report, the plumber noted that a water leak caused substantial damage to the property, including to the ductwork and foundation. Once the leak was repaired, the water was turned back on to the property. The plumber's report and the photographs of the leak were not provided to Farmers prior to the filing of this lawsuit.

4

{5}    On August 29, 2012, Marshall arrived at Plaintiff's house to inspect the damage and to adjust the claim. Marshall observed and photographed interior cracking, exterior cracking, and other structural defects. Marshall did not enter the crawl space to look for compensable damage, but he did take a photograph from the access point and noted that the dirt under the house was moist.[3] Marshall did not observe, nor did Plaintiff point out, any damage caused by direct exposure to water. That same day, Marshall notified Plaintiff that the cause of claimed damages was excluded under his insurance policy and that coverage would not be provided. On August 30, 2012, Marshall sent a letter confirming the denial of coverage under the policy's "earth movement" exclusion.

{6}    After his claim was denied by Farmers, Plaintiff contacted American Restoration, a company that specializes in the remediation of water damage. On or about September 12, 2012, Mark Valencia, who operates American Restoration, conducted an inspection of Plaintiff's house and provided a series of estimates for (1) general construction, (2) debris removal, (3) alternate housing, and (4) storage of furnishings. On October 15, 2012, Plaintiff signed a contract with American

---

[3]It is unclear from the record where the crawl space access point is relative to the location of the leaking pipe.

5

Restoration to perform the work outlined in the estimates. The contract expressly limited Plaintiff's responsibilities to the amount recovered under his insurance policy.

{7} On November 15, 2012, Plaintiff filed this lawsuit against Farmers, Marshall, and American Restoration. As relief, Plaintiff requested that the district court enter a declaratory judgment that Plaintiff's "water damage, structural damage, interior and exterior damage and other damages and claims, are covered [under the policy]." Plaintiff's complaint additionally alleged that Defendants were liable for breach of contract, insurance bad faith, breach of fiduciary duty, and statutory violations under the New Mexico Insurance Code and Unfair Practices Act.

{8} After Defendants answered the complaint, Plaintiff, on March 5, 2013, filed a memorandum supporting his motion for declaratory judgment. The memorandum addressed the terms of Plaintiff's insurance policy—specifically the terms tending to provide coverage for damages resulting from a plumbing leak.

{9} On March 6, 2013, American Restoration answered the complaint, filed a counterclaim against Plaintiff for breach of contract, and filed a cross-claim against Defendants for unjust enrichment and violation of the New Mexico Insurance Code.[4] Notably, American Restoration's answer to the complaint requested relief in the form

---

[4]American Restoration's cross-claim against Defendants was dismissed on March 28, 2013.

6

of a declaratory judgment that Plaintiff's insurance policy provides coverage for the "plumbing system leak and water damage" to Plaintiff's home.

{10}    Defendants filed a response to Plaintiff's motion, as well as their own motion for summary judgment, on March 27, 2013. In both their motion for summary judgment and their response to Plaintiff's motion for declaratory judgment, Defendants advanced the same argument—that damages related to "earth movement" are excluded under the policy and that "[t]he [p]roperty did not sustain any damage from water discharge alone."

{11}    Over the next several months, responses and replies were filed to both motions. On June 12, 2013, the district court held a hearing on both motions. Plaintiff primarily argued that the policy was ambiguous inasmuch as it provided coverage for damages resulting from plumbing system leaks but then revoked that coverage with respect to "earth movement."

{12}    The district court denied Plaintiff's motion for declaratory judgment. While discussing the procedural posture of the case moving forward, Defendants stated,

> maybe what we could get accomplished here is the status of the enforceability or the nonenforceability of the earth movement clause, and if there is a disputed issue of fact, we can do discovery on that. If [Plaintiff] can prove that there is damage not caused by earth movement, then there would be coverage. But it would assist the parties . . . to get a ruling on whether [the earth movement exclusion is enforceable.]

Plaintiff responded by stating,

7

as long as the parties have an opportunity to continue to explore whether or not there was direct damage caused by the water underneath the house[.] . . . I don't believe that the investigation into the extent of the damage and the final—you know, the ultimate or any additional cause of the damage has even been completed, much less to the extent of this coverage, so I would concur with [Defendants] on that matter [of additional discovery.]

The district court affirmed the enforceability of the "earth movement" exclusion, but granted Plaintiff additional discovery, stating,

earth movement caused by water leak is not covered by the policy, but I don't think that's the end . . . of the inquiry. . . . I will take [P]laintiff's request, pursuant to Rule [1-056(F) NMRA], to engage in discovery so that everyone[] can . . . carve out their positions with respect to what really happened with the water, what it touched, and what it moved.

This determination was formalized by an order filed July 8, 2013 (1) denying Plaintiff's motion for declaratory judgment, (2) affirming the enforceability of the policy's "earth movement" exclusion, and (3) holding in abeyance an ultimate determination as to Defendants' motion for summary judgment until additional discovery could be conducted.

{13}     Unfortunately, from this point onward, the pre-trial and discovery processes were derailed—largely by Plaintiff's failure to make valid expert witness declarations under Rule 1-026(B)(6) NMRA. During the protracted discovery period, Farmers reopened its investigation of Plaintiff's claim. In a letter dated November 26, 2013, Farmers stated,

8

> [d]uring the original field inspection, no evidence was provided to Farmers Insurance Exchange showing any covered damage from the loss. At that time, there was no active or visible leak, as it had apparently been repaired by your plumber. During the subsequent investigation, you provided photos that showed water spraying onto a portion of the flexible ductwork and a small portion of the insulation next to the spraying pipe. No other covered property was noted to be affected in the photos supplied. In the loss scenario for this claim, coverage for this portion of the ductwork and insulation damage would be covered.

This letter was accompanied by a check in the amount of $5,647.90—an amount estimated to cover replacement of the entire ductwork system and insulation given the square footage of the house. The letter stated that Plaintiff was being given the "benefit of the doubt" as to the extent of damages because the contractor had destroyed evidence of actual damage during remediation.

{14}     Defendants filed their renewed motion for summary judgment on December 13, 2013. Responses and replies were filed and, on March 20, 2014, the district court held a hearing on the motion. Following arguments by all parties, the court granted summary judgment in favor of Defendants. In doing so, the court explained that its decision-making was driven by a disconnect between Plaintiff's argument in response to the motion for summary judgment and the content of the original complaint. The court specifically noted, "the things that [Plaintiff is] arguing today [are] just that, argument. It's attorney argument that's not evidence, and the evidence here shows that there are no material issues of fact[.]"

9

{15} The district court's grant of Defendants' renewed motion for summary judgment extended to all of Plaintiff's statutory and common law claims. Plaintiff filed a motion for reconsideration, which was denied. This appeal followed.

**STANDARD OF REVIEW**

{16} Orders granting summary judgment are reviewed de novo. *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 9, 285 P.3d 644. Our case law repeatedly emphasizes that summary judgment "is a drastic remedy which should be used with extreme caution." *Cebolleta Land Grant ex rel. Bd. of Trs. v. Romero*, 1982-NMSC-043, ¶ 3, 98 N.M. 1, 644 P.2d 515. Summary judgment is appropriate only when the record before the court reveals no genuine issues as to material facts, making the moving party entitled to a judgment as a matter of law. *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 9, 123 N.M. 774, 945 P.2d 992; *see* Rule 1-056(C). Summary judgment proceedings should not be used to decide issues of fact, *Cebolleta*, 1982-NMSC-043, ¶ 3, and all reasonable doubts as to the existence of disputed material facts must be resolved in favor of the non-moving party. *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 9, 90 N.M. 753, 568 P.2d 589.

{17} Once a moving party makes a prima facie showing of entitlement to summary judgment, the burden shifts to the non-moving party "to demonstrate the existence of

10

specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. This demonstration may not simply consist of a restatement of the pleadings. *Oschwald v. Christie*, 1980-NMSC-136, ¶ 6, 95 N.M. 251, 620 P.2d 1276. Instead, the non-moving party must present admissible evidence, in the form of "affidavits or other means," tending to show that material facts exist. *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 18, 114 N.M. 228, 836 P.2d 1249.

**EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO COVERAGE**

{18}    To determine the appropriateness of a district court's grant of summary judgment, we review all the materials associated with the motion for summary judgment, including the pleadings, depositions, interrogatories, admissions, affidavits, and other documents on file, to determine the existence of a genuine issue of material fact. *See* Rule 1-056(C); *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65 ("[A] reviewing court will consider the whole record for evidence that places a material fact at issue."). In dissecting the filings related to Defendants' initial and renewed motions for summary judgment, we note a distinct shift in the characterization of claims articulated by Plaintiff and American Restoration with respect to the damages suffered as a result of the water leak at Plaintiff's home on August 22, 2012.

{19} Prior to the district court's initial summary judgment order, the claims and arguments made by Plaintiff and American Restoration focused upon the idea that ambiguity as to coverage precluded summary judgment. This argument proved unsuccessful when the district court granted summary judgment as to the enforceability of the policy's "earth movement" exclusion to Plaintiff's claim. However, in its ruling from the bench, the district court expressly invited Plaintiff and American Restoration to make alternative arguments as to direct water damage, stating, "I will take [P]laintiff's request, pursuant to Rule [1-0]56(F), to engage in discovery so that everyone[] can . . . carve out their positions with respect to what really happened with the water, what it touched, and what it moved."

{20} At oral argument before this Court, Defendants argued that the district court's partial summary judgment order was not intended to extend discovery with respect to additional damages, but only to investigate Plaintiff's initial claim. However, the record before us, as well as the language of the partial summary judgment order, when read in conjunction with Rule 1-056(F), does not support Defendants' interpretation of the district court's intent in granting partial summary judgment. The discussion leading up to the district court's ruling revolved around the idea that damages not related to "earth movement" were still being uncovered or disclosed. The partial summary judgment order states, "Defendants[] may resubmit their [m]otion for

12

[s]ummary [j]udgment after additional discovery has been conducted on the nature and source of Plaintiff's claimed damages." This language contemplates that Plaintiff's damages will evolve during the additional discovery period and is consistent with Rule 1-056(F), which allows a trial court to order a continuance "to permit affidavits to be obtained or depositions to be taken *or discovery to be had*[.]" (Emphasis added.) Furthermore, if the district court had no intention of entertaining claims of direct water damage, there would have been no reason to grant a continuance under Rule 1-056(F).

{21}  Because we conclude that the district court's partial summary judgment order invited Plaintiff to develop a claim for direct water damage, we review the record for materials that, when considered in the most favorable manner to Plaintiff, indicate a dispute of fact as to whether all claimed damages fall within the scope of the policy's "earth movement" exclusion. *See Brazell v. Save-On Drug, Inc.*, 1968-NMCA-095, ¶ 11, 79 N.M. 716, 449 P.2d 86 ("The trial court had the duty of viewing the pleadings, and all the testimony and evidence submitted in support of the motion for summary judgment in the most favorable manner [to the non-moving party.]").

**The Complaint**

{22}  Plaintiff's complaint was filed on November 15, 2012 and alleged "water damage . . . including but not limited to, cracking of the interior and exterior of

13

[Plaintiff's] home, structural foundation damage, all of which has rendered the home uninhabitable." Three photographs were attached to the complaint, one of which shows water spraying out of a pipe located under Plaintiff's house. We are unable to determine from the photograph which direction the water is spraying or whether any portion of the surrounding area is affected by the spraying water.

**American Restoration's Response to Defendants' Initial Motion for Summary Judgment**

{23} American Restoration's response to Defendants' initial motion for summary judgment was filed on April 15, 2013. This response referenced record materials including American Restoration's estimates for the remediation of water damages. The estimate for general construction was in the amount of $123,384.37 and included line items for general demolition, drywall, floor covering, finish carpentry, framing and rough carpentry, heat, vent and air conditioning, insulation, and painting. The estimates do not specify what type of damage necessitated the contemplated construction.

**Defendants' Renewed Motion for Summary Judgment**

{24} Defendants' renewed motion for summary judgment was filed on December 13, 2013. Attached to the motion was a letter from Farmers to Plaintiff explaining a coverage determination in Plaintiff's favor related to the claim. This letter was accompanied by a check in the amount of $5,647.90 and specifically noted that "you

14

provided photos that showed water spraying onto a portion of the flexible ductwork and a small portion of the insulation next to the spraying pipe." The letter goes on to cite relevant policy provisions that extend coverage for water damage arising from this "loss scenario."

**Plaintiff's Response to Defendants' Renewed Motion for Summary Judgment**

{25}   Plaintiff's response to Defendants' renewed motion for summary judgment was filed on December 27, 2013. The response stated, in pertinent part, "Defendant Farmers sent a check to . . . Plaintiff for $5,647.90 and in their letter admitted that there was water damage and that there was insurance coverage for the water damage"; "Plaintiff denies Adjuster Marshall saw all the damage to his house as evidenced by Farmers' letter and check covering water damages not discovered during Mr. Marshall's initial investigation"; "Plaintiff denies Mr. Marshall photographed all damage to his house as evidenced by Farmers' letter and subsequent check covering water damages not discovered during his initial investigation"; "Plaintiff denies that all the damage to his home was related to . . . earth movement as evidenced by Farmers' letter and subsequent check covering water damages not discovered during the initial investigation"; "Plaintiff denies the water damage complained of was 'new' or that he was fully compensated for his losses"; "Farmer[s'] issuing [of] a check and admitting there was coverage over a year after the initial loss shows a genuine issue

of fact is present"; and "[T]he mishandling by the adjuster . . . gave rise to an erroneous analysis of the insurance coverage . . . which raises further material issues of fact that prohibit the granting of [summary judgment]." In support of this response, Plaintiff attached deposition testimony of proffered expert insurance witness Garth H. Allen. Allen's testimony covers numerous topics and includes the following:

Q: So was there—is it your opinion there was other damage to the property that was caused by direct contact with water?

A: Oh, yes, lots.

Q: Okay. Let's list that.

A: Well, for Mr. Valencia's deposition, you were there. He went around with this probe to identify things that had moisture way above what would be normal. I think he said normal was 8 percent, and he was getting readings of 50 percent, and those readings were in a lot of different places in the house clearly above that area.

The problem with water, of course, is once it gets on wood, it wicks; so it goes all over the place. That's what was happening here. In some rooms, he even said it moved up the drywall. That creates a problem, potential future mold hazard, as we all know.

I think he identified that the insulation was all wet. It retained water and went a lot of different places in the crawl space of the house. So all of that estimate that he prepared, it's my understanding, is water oriented. So all of these things were water damaged: drywall, floor covering, carpet. . . .

Q: And the floor was wet, right? They had water on the floor, according to Mr. Valencia?

16

A: Exactly. Not that it sprayed directly on it, but—you understand water just as well as I do. I can spill water in the kitchen, and if the angle is right, it can run into the living room. It can spray up from the bottom and get the wood wet, and then it has this wicking tendency and can go in a lot of different directions.

. . . .

Q: And let me ask you this about that, because the way [Plaintiff] discovered the leak was that he heard it through a vent. His feet weren't wet. He didn't notice anything on the walls. He heard it through a vent, the water movement. Do you remember that part?

A: I sure do.

Q: So how do you reconcile that with what Mr. Valencia said?

A: What Mr. Valencia is observing is moisture within the flooring. You wouldn't necessarily see it on top of the flooring because it's within. As I understood it, there were, in many parts of the house, three layers of flooring. It started with 2-by-6s with gaps in them. On top of that was plywood, I think three-quarter of an inch. On top of that was the finish wood, the flooring itself. That's where the water was wicking around, between and among those layers.

**American Restoration's Response to Defendants' Renewed Motion for Summary Judgment**

{26} American Restoration's response to Defendants' renewed motion for summary judgment was filed on December 30, 2013. The response stated, in pertinent part,

[American Restoration] has broken down their work in to two categories, one for work done to correct problems caused by earth movement and one for work to correct problems caused by the pipe leak but not caused by earth movement[.] . . . Counsel for Farmers and Marshall . . . state that, "had this water seeped up into the wood and cracked the wood floors and all that, that would have been covered. . . ." That is precisely

17

what happened in this case. The entire floor had to be torn out of the home.

In support of this response, American Restoration attached an estimate generated, purportedly, for the purpose of demonstrating the distinction between efforts and costs related to repairing general water damage and those related to repairing the structural damages caused by the water leak.

**Defendants' Reply to American Restoration's Response to Defendants' Renewed Motion for Summary Judgment**

{27}     Defendants' reply to American Restoration's response to Defendants' renewed motion for summary judgment was filed on January 29, 2014. Attached to this reply were excerpts from deposition testimony given by Valencia, which included the following exchanges:

Q:     Do you even have fans that dry out a house?

A:     Yes.

Q:     You have that kind of equipment?

A:     Yes.

Q:     So do you do that kind of work?

A:     Yes.

Q:     Okay. And you do that when the water is actually on the floor in those circumstances, right?

A:     To dry out carpet and wall framing, yes.

. . . .

Q: And you're saying you could not do that in this case when the water was not even directly onto the floor, it was all humidity, right?

A: I don't know if it was humidity. It was wet in there. Where it came from, I don't know.

Q: So why not dry it out?

A: Putting fans on that wood floor is not going to dry out layers of wet paper in between. See, they use what they call a paper—its like a tarpaper, and they use that as a vapor barrier for humidity. And it was wet and rotten in between those layers.

. . . .

Q: What did you do for water mitigation?

A: Removed the wet flooring, the wet wood, the wet paper.

**Additional Record Materials**

{28} Additional materials, specifically additional excerpts from Valencia's depositions alleging direct water damage are present in the record. We, however, limit our analysis to those Rule 1-056(C) materials attached to summary judgment pleadings with one exception. During the hearing on Defendants' renewed motion for summary judgment, Defendants directed the court to pages fifty-four through fifty-

seven of deposition testimony given by Valencia on August 20, 2013.[5] During this testimony, the following exchange occurred:

Q:     When you arrived for your first inspection, the floor was wet?

A:     Yes.

Q:     And this is the interior of his home on the floor or under the crawlspace?

A:     Well, it was under, because the floor had layers of remodels, so it had—so the first layer is a—is a 1x6. Then it had a—that must have been how they built it, and then it had like a three-quarter plywood, and then it had a real wood flooring that he covered, to protect, with carpet, so it gets—the humidity and the water is trapped in those layers.

Q:     And you actually physically observed this with your own eyes?

A:     I did.

Viewing the record evidence in the light most favorable to Plaintiff, we cannot say that there are no issues of material fact as to the existence of covered claims. The photographs filed with the complaint show water spraying in an undetermined direction. The estimates provided by American Restoration appear to contemplate a scope of work beyond structural remediation. Deposition testimony indicates that numerous layers of flooring material were saturated and needed to be replaced. And,

_____

[5]This deposition testimony is attached to American Restoration's response to Defendants' motion in limine excluding Mr. Valencia as a fact witness and expert witness.

most significantly, a letter from Farmers to Plaintiff expressly stated that covered damages are indicated and included a check compensating Plaintiff for these covered damages.

{29}     In its order denying Plaintiff's motion to reconsider, the district court stated, "[w]hile both American Restoration and Plaintiff alluded to floor damage at oral argument, this is the first time either party has specifically utilized and identified actual testimony concerning damage to the floor." In a footnote to this comment, the court noted that "American Restoration also previously alluded to damage to the floor in its [r]esponse to Farmers [r]enewed [m]otion but provided no supportive evidence."

{30}     We concede that counsel for Plaintiff and American Restoration could have done more to clarify their evolving claims after the court's partial grant of summary judgment. Their responses inexplicably focused on previously decided issues and poorly conveyed that additional claims were being asserted. That said, the record evidence nevertheless indicates the existence of genuine issues of material fact.

{31}     For example, review of American Restoration's response to Farmers renewed motion for summary judgment reveals that an estimate for structural repairs is attached. The work outlined in this estimate is distinguished from non-structural repairs in the text of the response. Therefore, this estimate, which is properly made part of the summary judgment record by its attachment, must be considered. *See Gillin*

21

*v. Carrows Rests., Inc.*, 1994-NMCA-089, ¶ 16, 118 N.M. 120, 879 P.2d 121 ("The record indicates that [appellee] made the lease a part of the record by including a copy of the document as an exhibit to its memorandum in support of its motion for summary judgment."); *All. Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 16, 143 N.M. 133, 173 P.3d 55 (holding that properly submitted documents supporting motions for summary judgment may be considered). The content of the district court's order denying Plaintiff's motion for reconsideration indicates that this particular evidence was not considered in a manner most favorable to Plaintiff's right to a trial on the merits.

{32} We could conduct a full analysis of each piece of evidence outlined above but decline to do so. We are particularly influenced by Farmers' letter to Plaintiff granting coverage for water damage following the commencement of additional discovery pursuant to Rule 1-056(F). It is immaterial to a summary judgment analysis that Farmers belatedly provided coverage for certain damages indicated during the discovery process. The letter is admissible evidence of covered water damage as articulated by Plaintiff in his response to Defendants' renewed motion for summary judgment. After considering all admissible record evidence in the manner most favorable to Plaintiff, we conclude that material issues of fact exist as to whether all

damages claimed by Plaintiff are within the scope of the policy's "earth movement" exclusion.

{33} On appeal, Defendants cite federal case law for the proposition that Plaintiff has somehow failed to carry his burden of "plead[ing] and prov[ing] facts showing coverage" under our rules of civil procedure. *Miller v. Monumental Life Ins. Co.*, 376 F. Supp. 2d 1238, 1247 (D.N.M. 2005), *rev'd*, 502 F.3d 1245 (10th Cir. 2007). This argument is unconvincing. New Mexico is a notice pleading state. *See* Rule 1-008(A)(2) NMRA ("A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Plaintiff's complaint pleaded water damages. While it inarguably focused upon refuting that the policy's "earth movement" exclusion should apply, Defendants, upon receipt of Plaintiff and American Restoration's responses to Defendants' renewed motion for summary judgment, were undoubtedly on notice that Plaintiff was asserting a claim for direct water damage. *See Transamerica Ins. Co. v. Sydow*, 1981-NMCA-121, ¶ 18, 97 N.M. 51, 636 P.2d 322 (reversing summary judgment, this Court stated, "[t]he complaint is sparse in its allegations, but the record as a whole sufficiently amplifies the theory of liability and plaintiff's claim for relief"). Because the complaint achieved its essential purpose, we decline to hold that Plaintiff's only viable claims are those clearly articulated in the complaint. *See id.* ¶

23

16 ("All pleadings shall be so construed as to do substantial justice." (internal quotation marks and citation omitted)).

**CONCLUSION**

{34}    Because we conclude that summary judgment was improperly granted, we reverse and remand to the district court for additional proceedings consistent with this opinion. All of Plaintiff's common law and statutory claims are reinstated and the district court's cost order is reversed.

{35}    **IT IS SO ORDERED.**


                                        _____

                                        **JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Judge**


_____

**TIMOTHY L. GARCIA, Judge**

24